OPINION
{¶ 1} Plaintiff-appellant, Joel Swartout, appeals the judgment entry of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, BGR Company, Inc. ("BGR") and Fidelity Investments Institutional Services Company, Inc. ("Fidelity"), in an intentional tort and premises liability case. We affirm in part and reverse in part the decision of the trial court.
 {¶ 2} BGR, an Ohio corporation, employed Swartout as a service technician. BGR maintained and serviced Fidelity's machinery pursuant to a maintenance agreement. Fidelity is an investment company located in Covington, Kentucky. On March 19, 1998, BGR sent Swartout to Fidelity's Covington facilities in order to troubleshoot and service a stretch wrap machine ("Machine"), manufactured by Orion Packaging Services, Inc.
 {¶ 3} Swartout had been previously sent to Fidelity to service the Machine. The Machine is used to wrap materials, stacked on a pallet, so they can be shipped. It is L-shaped and consists of a powered turntable upon which a pallet of material to be wrapped is placed. The turntable rotates as a powered carriage moves up and down depositing stretch wrap on the load.
 {¶ 4} Fidelity has a security camera positioned on the loading dock that takes continuous still photographs of an area near the machine. According to Fidelity's event time line based upon video images, Swartout was seen at 12:44:37 working on the Machine. At 12:45:40, a United States Postal Services employee ran towards the Machine responding to Swartout's cries for help.
 {¶ 5} The postal service employee found Swartout facedown with the back of his head pinned beneath the Machine. His skull was crushed. Swartout has no memory of how the accident occurred. He recalls eating lunch that day. His next memory is of opening his eyes and seeing a pool of blood.
 {¶ 6} Swartout filed a products liability claim against Orion, the manufacturer of the Machine. He also filed an intentional tort claim against BGR and a premises liability claim against Fidelity. Orion, BGR and Fidelity moved for summary judgment. The trial court found that no genuine issue of material fact existed as to each of Swartout's claims. Swartout appeals the decision as it relates to BGR and Fidelity raising one assignment of error.[1]
Assignment of Error No. 1
 {¶ 7} "The trial court erred to the prejudice of plaintiff-appellant by granting summary judgment to all defendants, on all counts, even though facts needed to make a legal determination have not yet been decided by a jury and even though there are genuine issues of material fact."
 {¶ 8} Swartout maintains that the trial court erred in granting both BGR's and Fidelity's motions for summary judgment. He argues that genuine issues of material fact exist concerning his injury that preclude summary judgment.
 {¶ 9} Swartout claims that there are two possible explanations for the cause of his injury with each possibility giving rise to a claim against Fidelity or BGR. He states that if he was injured because he voluntarily placed his head beneath the machine to work on it, BGR is liable for an intentional tort claim. Contrarily, he claims that if a forklift or other object hit him causing him to fall beneath the machine, Fidelity is responsible pursuant to a premises liability claim.
 {¶ 10} An appellate court's review of a summary judgment decision is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. Pursuant to a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that: "(1) [there is] no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc., v.Applied Companies (1993), 67 Ohio St.3d 344, 346, citing to Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 11} The nonmoving party may not rest upon the allegations or denials in the pleadings, but must affirmatively demonstrate the existence of a genuine issue of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(C); Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Angel v. The Kroger Company, Warren App. No. CA2001-07-073,2002-Ohio-1607.
 BGR ¶ 12 Swartout maintains that the trial court erred in granting BGR's motion for summary judgment as to his intentional tort claim. He claims that if a jury found he voluntarily placed his head beneath the Machine, BGR would be liable for his injury because BGR improperly trained him to work on the Machine and did not protect him against a known danger.
 {¶ 13} An intentional tort is "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Jones v. VIP Dev. Co. (1984),15 Ohio St.3d 90, at paragraph one of the syllabus. In order to prevent a summary judgment motion in favor of an employer in an intentional tort action, the employee must present evidence which shows a genuine issue of material fact on each of the following elements: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances and with such knowledge, did act to require the employee to continue to perform the dangerous task. Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, at paragraph one of the syllabus; Hannah v. Dayton Power and Light Co., 82 Ohio St.3d 482, 485,1998-Ohio-408.
 {¶ 14} An intentional tort includes those that are only "substantially certain" to occur. Long v. Kelly Carpenter Roofing
(1995), 107 Ohio App.3d 26, 30. "An employee can not establish the `substantial certainty' element simply by demonstrating that the employer acted negligently or recklessly." Erickson v. Trucks Parts ofOhio, Inc., Preble App. No. CA2002-04-006, 2003-Ohio-1267, ¶ 11, citing to Hannah, 82 Ohio St.3d at 484. The Ohio Supreme Court explained in Fyffe:
 {¶ 15} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, 59 Ohio St.3d at paragraph two of the syllabus.
 {¶ 16} The lack of a prior accident is evidence tending to show that an employer did not have knowledge that an injury was substantially certain to occur. Taulbee v. Adience, Inc., BMI Division (1997),120 Ohio App.3d 11, 20. However, "the employer's knowledge of the risk as related to the nature of the dangerous condition should also be considered." Erickson, 2003-Ohio-1267, ¶ 13, citing to Taulbee,120 Ohio App.3d at 21.
 {¶ 17} Construing the facts in favor of Swartout, BGR knew from Swartout that the Machine was "run down." Swartout testified in his deposition that he had worked on the Machine a few times. He also stated that Ron Baker, Swartout's supervisor, had sent him on a previous occasion to Fidelity to service the Machine because Fidelity claimed it was operating on its own. Baker stated in his deposition that he has no recollection of this service call. Swartout testified that he checked the Machine and found no problems. He also stated that he had never witnessed the Machine operating on its own. Moreover, he admitted in testimony that he had worked on the Machine many times and did not think of it as dangerous, but "run down."
 {¶ 18} Swartout says that it is reasonable to infer that he did not receive proper training on the Machine, but he presented no evidence in support of his suggested inference. No evidence was presented that any of BGR's service technicians had ever suffered a significant injury while servicing equipment. Swartout admitted in deposition that he read the manual on a stretch wrap machine. Also, part of his training included going with Baker on service calls for about a three-week period. He also attended a one-on-one training seminar on the Machine with Baker for two hours on a Saturday. Further, Baker testified in his deposition that during Swartout's training he lectured him "what you don't feel safe in doing, don't do it."
 {¶ 19} Finally, Swartout maintains that Baker demonstrated looking under the turntable to inspect for problems by placing his head under the carriage. We agree with the trial court's statement in its opinion that Swartout relies "on this evidence to support [his] claim that BGR had knowledge that injury was substantially certain to occur." Baker also testified that when demonstrating how to look under the turntable he would have disengaged the carriage first. Further, Swartout stated that he does not believe that the injury was caused by his voluntarily placing his head beneath the carriage while it was moving. When asked about this scenario during his deposition, he testified, "you would have to have no brain at all to do something like that."
 {¶ 20} The trial court found that "Swartout has failed to put forth sufficient evidence to show that BGR knew that injury to its employee was substantially certain to occur." We agree. Looking at all the facts in a light most favorable to Swartout, we find Swartout has not shown that BGR knew that is was substantially certain he would be injured by working on the Machine. Swartout's assignment of error as to BGR being liable for an intentional tort is overruled.
 Fidelity {¶ 21} Swartout maintains that Fidelity was improperly granted summary judgment as to his premises liability claim. He asserts that a genuine issue of material fact exists as to whether a forklift or other object hit him causing him to fall beneath the Machine.
 {¶ 22} The trial court found that Kentucky law applies. Swartout did not oppose this finding. Fidelity's warehouse, where the accident occurred, is located in Kentucky and Swartout resides in Kentucky. Swartout's only connection with Ohio is that he is employed by BGR, an Ohio corporation. Therefore, the premises liability claim is based upon Kentucky law. Swartout is a business invitee pursuant to Kentucky law.Johnson v. Lone Star Steakhouse Saloon of Ky., Inc. (Ky.App. 1999), 997 S.W.2d 490, 491-492.
 {¶ 23} A possessor of a business premises owes a duty of exercising reasonable care and prudence to see that the premises are in a reasonably safe condition to its business invitee. Mahoney v. U.S.A.
(W.D.Ky. 1960), 180 F. Supp. 310, 312. The possessor also owes a duty to the invitee to discover the existence of dangerous conditions on its premises and either correct them or warn him of them. Johnson,997 S.W.2d at 492.
 {¶ 24} Negligence or a violation of these duties may not be presumed and must be established by evidence. Helton v. Forest ParkBaptist Church (Ky.App. 1979), 589 S.W.2d 217, 219. However,"[t]he presumption of innocence may be overthrown, and a presumption of guilty raised, by the misconduct of the party in suppressing or destroying evidence, which he ought to produce, or to which the other party is entitled. * * * The general rule is, Omnia proesumuntur contra spoliatorem. His conduct is attributed to his supposed knowledge that the truth would have operated against him." McClure v. McClintlock (Ky.App. 1912), 150 S.W. 332, 334, citing to Greenleaf on Evidence, Vol. 1, § 37.
 {¶ 25} Here, Swartout presented the testimony of two expert witnesses, Dr. Ronald Huston and Bernard Krotchten. Huston surmised that Swartout fell into the machine rather than became trapped from lying beneath the machine to diagnose and repair its problem. He testified that the still pictures from the video camera depicting the time between 12:44:37 to 12:45:40 may have been helpful in determining what caused Swartout to fall into the Machine. However, Fidelity misplaced or lost the photos after initially reviewing them and was unable to provide them to Swartout or his experts for review.
 {¶ 26} Huston based his opinion upon observing photographs depicting the placement of Swartout's tools and the location of his flashlight at the scene of the accident, speaking with Swartout, and learning of Swartout's position facedown beneath the Machine. He also considered the injuries to Swartout's head and chest.
 {¶ 27} Krotchten stated that the Machine was placed too near a high traffic area because of its close proximity to the dock, placing those operating the equipment in "harm's way." He opined that Swartout "was impacted by some external force" prior to the accident. He surmised that the impact had to be substantial and was probably caused by machinery in the area, such as a forklift. Krochten admitted that he did not have enough information to verify how the accident occurred and that the still photographs from the video camera would have been helpful. Further, Krotchten based his testimony partially upon Huston's findings in correlation with his own conclusions concerning the placement of the machine within the building.
 {¶ 28} Fidelity argued to the trial court in a motion in limine and argues here that the expert witness testimony of Krotchten and Huston should not be considered. The trial court had the motion in limine before it and did not make a ruling on it, but instead found summary judgment in favor of Fidelity. Because the trial court did not rule on the motion to preclude the testimony, and rendered judgment, this court presumes the motion was overruled. See Hughes v. Plastivax, Inc. (June 27, 1997), Lake App. No. 96-L-174. As such, this court will consider the testimony of Swartout's expert witnesses.
 {¶ 29} The trial court found that "there is no account that a forklift truck was at the scene when the injured Mr. Swartout was discovered." However, the video still photographs, taken from 12:44:37 to 12:45:40 depicting the doorway near where the Machine was located, are missing. Fidelity has reviewed the photos but has since stated that it has lost them. Swartout was never given a chance to review the photographs to prove or disprove whether a forklift was in the area between the last photo taken of him working on the Machine at 12:44:37 and when he was found by the postal employee at 12:45:40.
 {¶ 30} Kentucky law dictates that where evidence has been destroyed or suppressed that a party ought to produce, a presumption may be raised that "the truth would have operated against him." McClure, 150 S.W. at 334. As such, a genuine issue of material fact exists as to whether Swartout's accident was caused by a forklift hitting him. Further, if this is found to be true, a jury question remains as to whether Fidelity breached its duty to Swartout to exercise reasonable care and prudence to insure the premises were reasonably safe.
 {¶ 31} Accordingly, Swartout's appeal as to Fidelity is sustained. The judgment of the lower court is affirmed in part, reversed in part and remanded for further proceedings.
WALSH and POWELL, JJ., concur.
[1] Swartout did not appeal his products liability claim against Orion Packaging Systems, Inc.