**Mazie JONES, Appellant,**

v.

**Billy ABNER, d/b/a Lil' Abner Motel, Appellee.**

No. 2009–CA–001441–MR.

Court of Appeals of Kentucky.

March 11, 2011.

472

473

Melissa C. Howard, Jackson, KY, for appellant.

James E. Davis, Stanton, KY, for appellee.

Before ACREE and STUMBO, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Mazie Jones appeals from the Powell Circuit Court's entry of summary judgment in favor of Billy Abner, d/b/a Lil' Abner Motel as to her personal injury lawsuit against the motel. Appellant was injured when she slipped and fell while getting into a bathtub at the motel. Appellant asserts that summary judgment was inappropriate because a genuine issue of material fact existed as to whether the condition of the bathtub was unreasonably dangerous and a substantial cause of her injuries. However, after our review, we affirm.

### Facts and Procedural History

Appellant and her husband, Arnold Jones, arrived at the Lil' Abner Motel on Friday, July 21, 2006, for a weekend stay. Appellant showered upon her arrival at the motel and again the following day. On Sunday morning, Appellant went into the bathroom and once again began preparing to take a shower. With the water running, she put her right foot into the bathtub. As she picked up her left foot, she slipped and hit the side of her head against the end of the tub. She was taken by ambulance to Clark County Regional Hospital and later transferred to the University of Kentucky Hospital. Appellant suffered a concussion as a result of her fall and was required to undergo a number of dental surgeries, including procedures to attach plates to her jawbone.

Appellant subsequently filed a personal injury lawsuit against Appellee in which she cited the bathtub's condition as an unreasonably dangerous condition that she encountered as an invitee on the motel premises. Appellant specifically contended that the bathtub was slippery because of the methods used to clean it and that this slipperiness was exacerbated by Appellee's failure to install and/or maintain

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

appropriate non-slippage devices in the bathtub—including a handrail and non-slip safety strips at the bottom of the tub. Appellee denied Appellant's allegations, and the parties proceeded to take a number of discovery depositions.

In her deposition, Appellant claimed that on the day she fell the bathtub was slicker than it had been during her two previous showers, but she had "no idea" why the tub was especially slick that morning. Appellant assumed that the bathroom and tub had been cleaned between her Friday and Saturday showers because there were no dirty towels in the bathroom, and she made a similar inference that the bathroom had been cleaned between her Saturday and Sunday showers. Appellant could not recall how many non-slip safety strips were in the bathtub to stand on, but she noted that there was no safety rail in the tub. She also acknowledged that she did not consider the bathtub to be unsafe prior to her fall.

Appellant's husband, Arnold Jones, testified that he was the first person to hear Appellant fall and that water was running in the bathtub when he found her. When asked about whether there were any non-slippage safety devices in the bathtub, Jones indicated that "it had about four (4) strips" and that they were "just more or less in the center." He further noted that they looked "old" and that there were "strings . . . coming off the side," an indication that they were worn. Jones blamed Appellant's fall on a lack of safety rails and "something better" on the bottom of the bathtub, but he acknowledged that he had not told anyone at the motel that he was concerned about the safety of the tub.

Appellee disagreed with Arnold Jones' depiction of the safety strips. He testified that every bathtub in the motel contained slip-resistant strips and that the ones in Appellant's room were replaced in the spring prior to her fall. He also produced a photograph of the bathtub taken in 2007 showing that there were eight safety strips on the bottom of the bathtub and noted that to the best of his knowledge, no changes had been made to the tub since Appellant's fall.

Alberta Bowen, a housekeeper at the motel, testified that she cleaned the subject bathtub on Saturday afternoon with a Clorox spray and water while the Joneses waited outside. According to Bowen, her general practice was to use a dry bath towel to wipe a bathtub down after cleaning it, and she noted that she "always" did this—including on this occasion. She further indicated that the cleaning solution in question was not particularly slick. Bowen testified that Appellant was "irritated" because the room had not been cleaned earlier, but she indicated that she cleaned the bathtub in her usual manner even though she felt "rushed." Bowen also noted that all of the bathtubs in the motel contained non-slip safety strips "all over the bottom" and that those strips were replaced regularly if they ever became loose. Bowen further testified that the bathtub was not cleaned again prior to Appellant's fall.

On June 12, 2009, Appellee filed a motion for summary judgment asserting that Appellant could not show that she encountered an unreasonably dangerous condition at the motel or that Appellee's actions were a substantial factor in causing her injuries. Appellee further argued that because the condition of the bathtub was open and obvious, Appellant should be barred from recovery. The trial court granted summary judgment for Appellee on the grounds that Appellant could only speculate as to what caused her to fall and that she was unable to show that she had encountered any unreasonably dangerous condition caused by Appellee. This appeal followed.

## Analysis

On appeal, Appellant argues that summary judgment was inappropriate because of the existence of genuine issues of material fact. Appellant specifically contends that questions existed as to whether the number and condition of the non-slip safety strips in the bathtub and the solution used to clean the bathtub created a dangerous condition that caused her injuries. The standards for reviewing a trial court's entry of summary judgment are well-established and were concisely summarized by this Court in *Lewis v. B & R Corp.*, 56 S.W.3d 432 (Ky.App.2001):

> The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." While the Court in *Steelvest*[2] used the word "impossible" in describing the strict standard for summary judgment, the Supreme Court later stated that that word was "used in a practical sense, not in an absolute sense." Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*

*Id.* at 436 (Internal footnotes and citations omitted).

■ The parties agree that as a guest in the motel, Appellant was a business invitee. *See generally Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431 (Ky.2003) (discussing business invitees in "slip and fall" cases). Consequently, in order to create a rebuttable presumption sufficient to defeat Appellee's motion for summary judgment, Appellant was required to show that:

> (1) ... she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees.

*Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky.2003); *see also Lanier*, 99 S.W.3d at 435–36.

■ Appellant claims that the motel bathtub was unreasonably dangerous for two reasons. First, she argues that the bottom of the bathtub was overly slick and that this slickness was attributable to the cleaning practices of Appellee's employees—specifically, that cleaning residue was left on the bottom of the tub when it was cleaned the day before her fall. However, Appellant's argument amounts to nothing more than pure conjecture because she provides nothing of substance to support her position. Alberta Bowen, the motel housekeeper, testified that she cleaned the bathtub on Saturday morning with Clorox

---

**2.** *Steelvest, Inc. v. Scansteel Service Center,*      *Inc.*, 807 S.W.2d 476 (Ky.1991).

spray and that her general practice was to then rinse out the bathtub and to wipe it down with dry towels. She further claimed that she followed this same process after cleaning Appellant's bathtub. In response, Appellant offers only a speculative hypothesis that a "slick residue" was left in the bathtub after it was cleaned.[3] This does not satisfy our standards for summary judgment. "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 199 (Ky.2001). Accordingly, "speculation and supposition" are not enough to survive a motion for summary judgment. *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky.2006), *quoting Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky.1951). Appellant essentially assumes that something slippery caused her fall without providing any evidence to support her assumption. Thus, this claim provides no basis to reverse the trial court's entry of summary judgment.

■ Appellant next asserts that a lack of adequate non-slippage devices in the bathtub created an unreasonably dangerous condition that caused her fall. The trial court's order of summary judgment noted that Appellee had established that the non-slippage safety strips in the tub were in good condition and changed regularly. However, Appellant's husband disputed this version of events, testifying that the strips were worn and frayed. Appellant argues that the conflicting testimony on this issue creates a genuine issue of material fact, but we are not inclined to agree.

■ Even if Appellant's husband's testimony about the condition of the safety strips was accurate and we were to grant

his testimony the benefit of any doubt, there remains the fact that Appellant had twice previously used the bathtub without incident and must be assumed to have been fully aware of the condition of the tub. "Reasonable care on the part of the possessor of business premises does not ordinarily require precaution or even warning against dangers that are known to the visitor or so obvious to him that he may be expected to discover them." *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490, 492 (Ky. App.1999), *quoting Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 528 (Ky.1969). Moreover, Appellant has produced no evidence showing that even if the strips were worn and frayed, they nonetheless failed to do their job or somehow contributed to her fall. Appellant provided no substantive proof that the strips gave way or slid out from beneath her feet or were so worn that they failed to provide adequate traction. Instead, Appellant simply assumes that their allegedly deteriorated state was a cause of her fall. As noted above, this speculation is not enough to overcome a proper motion for summary judgment.

■ We further note that the risks inherent in bathing or showering are open, apparent, and obvious to anyone who has ever taken a bath or shower. *See Kutz v. Koury Corp.*, 93 N.C.App. 300, 377 S.E.2d 811, 813 (1989) ("It is common knowledge that bathtub surfaces, especially when water and soap are added, are slippery and that care should be taken when one bathes or showers."). Because of this, we decline to assume, as a matter of law, that motels or hotels have an automatic duty to provide precautions against such conditions. Appellant seems to assume that a bathtub that is not equipped with safety strips or

---

3. We also note that although Appellant contends that none of the motel employees observed any water or soap in the bathtub after her fall, she admitted in her deposition that she turned on the water in the bathtub immediately before attempting to get in.

hand-holds is an inherently dangerous condition, but she failed to produce evidence of any type of industry standard, statutory law, or common-law rule that could arguably reflect a duty on the part of Appellee to equip motel bathtubs with such safety devices. The owner of a motel or hotel has "the duty to exercise that degree of care generally used by ordinarily careful, prudent hotel operators in circumstances similar to those proven in the case, to provide reasonably safe accommodations," but he is not an insurer of a guest's safety. *See Blue Grass Restaurant Co. v. Franklin*, 424 S.W.2d 594, 599 (Ky.1968); *Brown Hotel Co. v. Marx*, 411 S.W.2d 911, 914 (Ky.1967). Appellant simply did not provide the trial court with anything of substance to meet this burden.

We finally note that while "[a]n invitee has a right to assume that the premises he has been invited to use are reasonably safe ... this does not relieve him of the duty to exercise ordinary care for his own safety, nor does it license him to walk blindly into dangers that are obvious, known to him, or would be anticipated by one of ordinary prudence." *Rogers v. Professional Golfers Ass'n of America*, 28 S.W.3d 869, 872 (Ky.App.2000), *quoting Smith v. Smith*, 441 S.W.2d 165, 166 (Ky. 1969). As such, and even if the non-slippage safety strips were not in good repair, Appellant knew or should have known of the potential for harm, and she had a duty to take care for her own safety because of the risks attendant to using a bathtub. Accordingly, we believe that summary judgment was appropriate in this case.

### Conclusion

For the foregoing reasons, the summary judgment entered by the Powell Circuit Court is affirmed.

STUMBO, Judge, concurs.

ACREE, Judge, concurs and files separate opinion.

ACREE, Judge, concurring:

Respectfully, I write separately because I believe it important to consider *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky.2010). The case *sub judice* demonstrates that summary judgment is still available in proper cases despite the fact that analysis under *McIntosh* does not stop with a determination that a hazard is open and obvious.

"[T]o allow known or obvious conditions to always absolve land possessors from any liability 'would be to resurrect contributory negligence[.]'" *McIntosh*, 319 S.W.3d at 391. With "[t]he focus on foreseeability[,]" our Supreme Court embraced the reasoning underlying Restatement (Second) of Torts § 343A(1) cmt. f (1965) that "sometimes 'the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.'" *Id.*, *quoting* Restatement (Second) of Torts § 343A(1) cmt. f. The Supreme Court thereby recognized what it refers to as a plaintiff's "defense of foreseeable distraction" that undermines the formerly determinative open-and-obvious doctrine. *Id.* at 394.

In *McIntosh*, the record demonstrated that the plaintiff (an emergency medical technician moving a patient from an emergency vehicle to the hospital's emergency room) was foreseeably distracted from the open and obvious hazard of an uneven curb between the ambulance dock and the emergency room doors. *Id.* Noting it was "important to stress the context in which McIntosh sustained her injury[,]" the Court emphasized that her "dire need to rush critically ill patients through the emergency room entrance should be self-

evident"; such a distraction was unquestionably foreseeable by the hospital which had every "reason to expect that the invitee will proceed to encounter the known or obvious danger because ... the advantages of doing so [preserving health and saving lives] would outweigh the apparent risk." *Id.* (Internal quotation marks and citation omitted).

Consequently, in *McIntosh*, "the plaintiff had the defense of foreseeable distraction, as she was attending her patient." *Id.* Mazie Jones had no such defense. Whereas McIntosh's focus was properly and foreseeably on something other than the haz-ard, Jones' focus, necessarily, should have been on the hazard itself. Obviously, it was not. Jones presented no evidence whatsoever that she was distracted from her "duty to act reasonably to ensure her own safety, heightened by her familiarity with the location and the arguably open and obvious nature of the danger." *Id.* at 395.

Because this case is clearly distinguishable from *McIntosh*, I concur.